CONTOUR CHAIR-LOUNGE CO., Inc., Appellant,

v.

The ENGLANDER COMPANY, Inc., Appellee.

Patent Appeal No. 7011.

United States Court of Customs and Patent Appeals.

Nov. 14, 1963.

Rehearing Denied Jan. 17, 1964.

Kingsland, Rogers, Ezell & Robbins, Estill E. Ezell, Edmund C. Rogers, St. Louis, Mo., for appellant.

Olson, Trexler, Wolters & Bushnell, Chicago, Ill. (Richard Bushnell, Chicago, Ill., of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

RICH, Judge.

This is an appeal by the opposer in a consolidated opposition and cancellation proceeding wherein the Patent Office Trademark Trial and Appeal Board dismissed both the opposition and the petition to cancel. (133 U.S.P.Q. 573.)

The petitioner for cancellation, who was the applicant in the opposition, took no appeal from the dismissal of its petition, wherefore that proceeding (No. 7,-462) has terminated and is not before us. The only decision here for review is the dismissal of the opposition, No. 36,890.

Appellee, The Englander Company, Inc., filed application Ser. No. 16,195, September 24, 1956, to register "Conturfoam" (written in upper and lower case script) on the Principal Register as a trademark for "Mattresses and Box Springs," claiming use since September 5, 1956.

Appellant, Contour Chair-Lounge Co., Inc., filed its notice of opposition to the registration on the basis of its ownership of the trademarks "CONTOUR," "CONTOUR CHAIR," and "CONTOUR CHAIR-LOUNGE." The last-named trademark is the subject of Reg. No. 520,737 of February 7, 1950, Principal Register. The board noted that on August 23, 1955, a combined affidavit under Secs. 8 and 15 of the trademark statute was filed, which was evidently accepted. The goods named in that registration are "Upholstered Chairs of the Elongated Type, which are Longitudinally Adjustable for Variation of Inclination."

The trademark "CONTOUR" is the subject of Reg. No. 642,944, registered on the Principal Register March 19, 1957, on an application filed August 23, 1956, for "Chairs." The opposition notice was filed February 26, 1957, which was during the pendency of this application. Ownership of the mark "CONTOUR" having been pleaded in the notice, we regard the date of registration as unimportant here and, of course, must take the registration into account. The date of its application antedates appellee's earliest claimed use.

Also introduced in evidence in both proceedings was opposer's Principal Register Reg. No. 696,071 of April 12, 1960, granted on an application filed August 19, 1959, for "Chairs, Beds, Mattresses, and Box Springs" of the trademark "CONTOUR COMFORT." The first use claimed in the registration for this mark is November 15, 1958.

The record before us, being that of the opposer and containing only matters relating to the opposition proceeding, contains only such incidental information about the cancellation proceeding as appears in the testimony and opinions of the board.[1] It is stated that applicant-appellee petitioned to cancel the registrations of "CONTOUR" and "CONTOUR CHAIR-LOUNGE" "on the ground that said terms are merely descriptive or generic designations as applied to opposer's goods." As aforesaid, the board dismissed that petition and no appeal was taken from that decision. The posture of the case in this court, therefore, is the same as though no such petition had been filed and we are obliged to treat opposer's registrations as valid and to consider opposer as entitled to all the benefits of such registrations provided by statute. (Having dismissed the cancellation petition, the board was likewise obliged to so treat the registrations.) Among the statutory benefits accorded registrations on the Principal Register are those of section 7(b) of the Trademark Act of 1946 (15 U.S.C. § 1057(b)) which reads:

"A certificate of registration of a mark upon the principal register pro-

---

1. There are 3 opinions: the original; an opinion of May 1, 1962, on a petition for reconsideration; and one of May 17, 1962, on a petition for modification of the board's opinion, which was denied.

vided by this Act shall be prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated therein."

No conditions are stated in the certificates of registration.[2]

 The starting point in this case is that opposer's registrations are valid and enjoy the benefits of section 7(b). The next point is that this is an opposition only and in an opposition, this court has always held, the validity of the opposer's registrations are not open to attack. E. Daltroff & Cie v. V. Vivaudou, Inc., 53 F.2d 536, 19 CCPA 715, 717; Skelly Oil Co. v. The Powerine Co., 86 F.2d 752, 24 CCPA 790, 792; Coty, Inc. v. Perfumes Habana, S.A., 190 F.2d 91, 38 CCPA 1180, 1185; Eureka Williams Corp. v. Willoughby Machine and Tool Co., 194 F.2d 543, 39 CCPA 832, 833. To the same effect, see the board's decision in The Julep Company v. Lipsey, 131 U.S.P.Q. 334. As long as a registration relied on by an opposer remains uncancelled, we treat it as valid, entitled to the section 7(b) presumptions, and take it at face value. General Shoe Corp. v. Lerner Bros. Mfg. Co., Inc., 254 F.2d 154, 45 CCPA 872.

In its handling of this case, the board has, in effect, violated the foregoing legal principles. Its decision *in the opposition* is found in the following paragraphs from its combined opinion on both issues:

" * * * the record in this case can only lead to a conclusion that the use in the trade of 'CONTOUR' to indicate generally a chair designed to conform to the contour of the human body has been so widespread and of such duration that it has come to signify any such chair rather than a chair of opposer's manufacture.

"With regard to the opposition, in view of the above conclusion that the term 'CONTOUR' does not identify opposer's goods and distinguish them from similar goods of others, it necessarily follows that issuance of the registration for which applicant has made application could not involve damage to opposer."

On petition for reconsideration, the board added these thoughts:

"While it is true, as opposer contends, that the validity of an opposer's registration may not be collaterally attacked in an opposition, the registrations of the instant opposer were directly attacked by applicant in a separate petition to cancel the same. * * * it is believed that the evidence introduced by applicant to show the lack of distinctiveness of the term 'CONTOUR' was properly considered by the Board in its finding in the opposition of no likelihood of confusion between the respective marks."

Opposer correctly notes that the original opinion of the board said nothing whatever about likelihood of confusion.

In denying a further petition to modify its opinion, the board said:

"The Board's finding in the decision in question [meaning its original opinion] that 'CONTOUR' does not identify opposer's goods and distinguish them from similar goods of others is believed proper and is accordingly adhered to."

2. Appellant—and several cited cases likewise—speaks at length on the subject of the "validity of opposer's trademarks," which we take to mean the validity of its *registrations*. Reflection should show that the expression "validity of a trademark" is meaningless. An alleged trademark which is not "valid" is *not* a trademark and is therefore *nonexistent*.

A registration, on the other hand, is a government certificate which can be declared to be "invalid," i. e., of no legal effect. A dispute about whether or not a word or device is or is not a trademark under the law, however, is not a dispute about the validity of anything except the proponent's argument.

■ Short of saying so *in haec verba,* the board could not have stated more clearly its opinion that opposer has no trademark rights in "CONTOUR" with respect to chairs. This conclusion is in direct conflict with the existence of Reg. No. 642,944 of the word "CONTOUR" for chairs, which the board left on the register by denying the petition to cancel it, and is legally impermissible. We are obliged, by the facts of this case, to treat opposer as the owner of *the trademark* "CONTOUR," at least as applied to chairs, and to decide the opposition on that basis. It is impermissible to indulge in the fiction, as did the board, that some "trademark" rights remain while effectively reducing the legal concomitants of trademark ownership and registration to zero by holding that the mark *does not* distinguish opposer's goods.

■ What remains, therefore, is the question of registrability of "Conturfoam" for mattresses and box springs under section 2(d) of the statute. The question is whether it "so resembles" "CONTOUR," or "CONTOUR CHAIR-LOUNGE" or the trade name CONTOUR CHAIR-LOUNGE CO., "as to be likely to cause confusion, or to cause mistake, or to deceive."

Assuming, as we must, that "CONTOUR" *is* a trademark, which means simply that it is capable of and does indicate the source or origin of the chairs to which opposer applies it (and also certain heated pillows on which the trademark was used, according to the testimony, though they are not included in any registration), we believe it likely that confusion would result from the concurrent use of "Conturfoam" on mattresses, presumably of the foamed latex type. Foam is purely descriptive of such an article and "Contur" but a slight misspelling of "Contour," with identical pronunciation and meaning. The evidence shows that mattresses and opposer's lounge chairs are sold in the same stores to the same class of purchasers for home use and advertised together through the same media.

It is argued that the goods are expensive and for that reason the purchasers and potential purchasers would be discriminating. We do not believe that mere high cost necessarily makes a purchaser discriminating *as to the source* of the goods, such discrimination as is urged here being largely a matter of consciousness as to *whose* merchandise is being purchased. The department store purchaser-consumer is wont to look to the trademark as the indication of source and we believe that on these goods, which such purchasers may buy only once, or at most a very few times, during a lifetime, the concurrent use of "CONTOUR" and "Conturfoam" would be likely to result in a substantial amount of confusion as to source, assuming, *as we must,* that "CONTOUR" indicates origin.

Opposer also argues that it would not be unreasonable to expect that it might extend its business under the "CONTOUR" mark into the bedding field and that registration of applicant's mark would be damaging to it for this reason because it would potentially interfere with its use of "CONTOUR" on such things as mattresses. It supports the reasonableness of such an assumption by evidence that it has in fact done so, and in this connection produces Reg. No. 696,071, above noted, of "CONTOUR COMFORT" for chairs, beds, mattresses, and box springs. That registration must be taken as prima facie evidence of opposer's exclusive right to use that mark on those goods. Section 7(b). We cannot sanction the registration of "Conturfoam" for goods identical in part with those named in the registration, considering the prohibition of section 2(d). We do not see that the fact opposer adopted and used this mark on these goods *after* the applicant's first use on mattresses and box springs is a relevant consideration here. As between the parties, the opposer was the first user of "CONTOUR" and additionally possesses this registration. Applicant's mark is not yet registered and before it can be it must clear all of opposer's registrations in accordance with the statutory provi-

sions. Section 2(d) does not speak of priority but of a "mark registered." "CONTOUR COMFORT" is so registered—for mattresses and box springs. This is not an interference proceeding and we do not see that we are concerned with any issue of priority of use on particular goods as between the parties.

We note as a matter of interest In re Restonic Corporation, 122 U.S.P.Q. 100, in which, on June 25, 1959, the board affirmed the ex parte rejection of an application to register a mark consisting of the words "CONTOUR CONTROL" plus a design consisting of a reclining figure on a mattress, for mattresses and box springs, rejection being predicated on likelihood of confusion in view of opposer's registrations of "CONTOUR" and "CONTOUR CHAIR-LOUNGE" here involved.

We also note the case of Plastic Contact Lens Co. v. Contact Lens Foundation, Ltd., 125 U.S.P.Q. 358, wherein the board granted a petition to cancel the registration of "CONTOUR" for contact lenses on the ground of descriptiveness of those goods.

Neither of these cases, which were cited by the parties respectively, seems important on the issue before us. The first case seems somewhat inconsistent with what the board has done here and the second case, dealing with cancellation and the descriptiveness of a word we are obliged under the circumstances of the present case to treat as a good trademark by virtue of a registration, is beside the point.

Appellee's argument is largely devoted to its contentions that "CONTOUR" is a common or descriptive name of a class of chair and is used descriptively in the trade, "by 'hundreds' of retailers," and lacks trademark significance. We have not overlooked these arguments but see no point in discussing their merits because the registrations constitute complete legal refutation and are binding on us. Apparently appellee, in failing to appeal in the cancellation proceeding, did

not appreciate the parlous state in which the board's seemingly favorable decision left it.

The decision of the board is reversed.

Reversed.