52 CCPA

**The MAGNAVOX COMPANY, Appellant,**

v.

**MULTIVOX CORPORATION OF AMER-ICA, Appellee.**

**Patent Appeal No. 7321.**

United States Court of Customs and Patent Appeals.

Feb. 18, 1965.

Ralph B. Stewart, Solon B. Kemon, Washington D. C., for appellant.

Jacobi, Davidson & Jacobi, Herbert J. Jacobi, Samuel L. Davidson, Donald A. Kaul, Washington, D. C., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

The Multivox Corporation of America (hereinafter Multivox) filed an application, serial No. 88,163 on December 29, 1959, to register "MULTIVOX" for electric organs, use since February 20, 1959 being alleged. That application was opposed by The Magnavox Company (hereinafter Magnavox) as confusingly similar to its mark "MAGNAVOX," used on goods hereinafter enumerated. Both parties took testimony. The opposition, No. 40,159 was dismissed by the Trademark Trial and Appeal Board (138 USPQ 692), and appellant seeks review of that decision.

Appellee was incorporated in New York in 1952 under the name "Multivox Corporation of America" and is engaged in the business of importing, manufacturing and selling musical instruments and accessories. Since early 1959 it has used the mark "MULTIVOX" to identify certain of its products, specifically electric organs for which registration is sought, as well as accessories therefor, such as organ benches, and instruction and song books.

From the record it is evident that appellee's electric organ is basically an accordion made in the form of a portable organ, with a small piano type key board and stops, to which an electric motor is added to supply air to the reeds. The retail prices for the "MULTIVOX" reed organs range from about $90 to $380, with a majority being in the $100–$200 range. Sales between 1959 and 1961 totaled 9,500 units, and were made primarily to music studios and music stores which handle and teach music.

Opposer-appellant Magnavox and its predecessors have continuously used the mark "MAGNAVOX" in connection with a large variety of electrical apparatus and sound amplifying equipment, including special types of telephones and associated equipment, radios, phonographs and combinations of the two, loud speakers, public address systems and components therefor, television sets, vacuum tubes, electrolytic capacitors, dry cell batteries, and digital computers and data processing systems including digital converters.[1] Various dates of first use of the marks consisting of or containing "MAGNAVOX" are noted in the record, the first being May 1915, but for this appeal it is important only that the use of "MAGNAVOX" occurred prior to the use of "MULTIVOX" on the respective goods.

The products of appellant are sold through more than 2500 dealers, the total sales since 1931 being over $665,000,000, including somewhat in excess of three million radios, phonographs, televisions and combinations thereof during the period from 1949 through 1960. Advertising expenditures in all types of media have amounted, since 1931, to over thirty million dollars or approximately five percent of the dollar sales of the goods.

Concerning the channels of trade, the board noted that the dealers handling the products of appellant include department stores which offer for sale radios, phonographs and television sets, and also "electrical appliances and musical instruments including, in some instances, electrically operated organs." Further, it is admitted by appellee that some of its customers who sell its electric reed organs also sell radio and television receivers.

Although not directly stated, it is evident that the board considered the chan-

---

1. Opposer is the owner of eight registrations for the mark "MAGNAVOX" for its many products, Registration Nos. 138,059 issued Dec. 14, 1920 and twice renewed; 193,292, issued Dec. 23, 1924 and renewed; 306,179, issued Sept. 12, 1933 and renewed; 402,829, issued Aug. 17, 1943; 433,882, issued Nov. 4, 1947; 443,819, issued Mar. 7, 1950; 536,242, issued Jan. 9, 1951 and renewed; 648,-587, issued Jul. 16, 1947. It also owns registrations for the marks "MAGNA-VOX PLAYFELLOW," Reg. No. 339,-460, issued Oct. 6, 1936 and renewed; "MAGNAVOX CONCERTO," Reg. No. 342,490, issued Jan. 19, 1937; "MAG-NAVOX DUETTE," Reg. No. 368,572, issued Jun. 27, 1939 and renewed.

nels of trade to be the same or substantially similar. The board stated:

"Opposer's 'MAGNAVOX' phonographs, television receivers and like goods and applicant's 'MULTIVOX' organs are products which are generally sold to the same class of purchasers, and since admittedly some dealers in applicant's organs also sell television and radio receivers, it is not unlikely that such purchasers will encounter the products of both parties in the same retail establishments under the respective marks 'MAGNAVOX' and 'MULTIVOX'. * * * " [footnote omitted.]

The goods of both parties, although not identical, are certainly closely related, and are clearly likely to be found in the same channels of trade. In that statement the board also concluded that the class of purchasers were the same. We agree that the class of purchasers, if not the same, is substantially similar.

■ The issue thus is considerably narrowed and was accurately stated by the board:

" * * * The only question for determination herein is whether or not in view of opposer's prior and extensive use of 'MAGNAVOX' for its various products purchasers encountering applicant's 'MULTIVOX' organs are likely to assume that they are produced by or in some way originate with opposer."

The board found no likelihood of confusion, stating:

"* * * These marks are, as opposer has pointed out [,] alike in that the terminal portions of the marks are identical and that the prefixes both commence with the letter 'M'. This common feature 'Vox' is, however, a dictionary term connoting voice, and as such has a merely descriptive significance as applied to the goods of the parties, and considering that the initial portions 'MULTI' and 'MAGNA' are readily distinguishable terms with well known meanings, it is concluded that 'MAGNAVOX' and 'MULTIVOX'

are sufficiently different that confusion in trade as to the source of the goods sold thereunder is not reasonably likely to occur."

We cannot agree, and feel that the concurrent use of the two marks on the various goods of the two parties is likely to cause confusion, mistake or deception as to the source of the goods carrying the mark "MULTIVOX."

Insofar as the marks themselves are concerned, both begin with the letter "M"; both have eight letters, and the suffix of both is "VOX," which is, in our opinion, the dominant feature of the marks. They present in their entirety the same general appearance to the purchaser such that confusion, mistake or deception is likely. As has often been noted by this court in considering likelihood of confusion, it is a question of the perception of the marks as a whole. It is for this reason that we reject the approach of the appellee, which dissects the mark into the parts "MULTI" and "VOX" and then argues the latter part to be of "no trademark significance" while the "prefix" part is significantly different.

■ We think the board erred in considering the identical terminal portion of the marks, "VOX," as being "merely descriptive" of the goods. While "vox" is a dictionary term connoting voice, it is a term of Latin origin not of common use in the English language. We agree that it connotes "voice" and in that sense is suggestive. Even taking it as clearly meaning "voice" to the common purchaser, it alone or as part of the mark cannot be said to be descriptive of the goods, electric reed organs.

■ In urging the correctness of the board's conclusion that "VOX" is merely descriptive, appellee cites thirty-three trademark registrations to third parties having the term "VOX" as the suffix or terminal portion. Appellee notes that:

"* * * Moreover, there are trademark registrations having 'VOX' suffixes for the *exact* goods of each of the parties. * * * "

As examples of the marks for electric organs, appellee has introduced in evidence registrations for "ORGAVOX" and "ElTronoVox." [2] While third party registrations to the identical mark in its entirety on different goods may tend to show the mark is a weak one, that is not conclusive, Conde Nast Publications, Inc. v. American Greetings Corp., 329 F.2d 1012, 51 CCPA 1176, particularly here where the commonly used portion forms only a part of the mark, and none of the registrations allege use prior to appellant's mark, or are proof of current use.

The many third party registrations demonstrate only that "VOX" has been used in many ways as a part of trademarks. This factor may be considered in judging the degree of significance of the dominance of the suffix "VOX" in the entire mark. Even assuming some "weakness" is imparted to the mark by a common suffix, it merely de-emphasizes "VOX" somewhat and reinforces our view that the marks must be considered in their entireties.

As well as pointing to the fact that "Multi" means many and "Magna" means big, appellee also relies heavily on New Castle Products, Inc. v. American Door Co., 291 F.2d 954, 48 CCPA 1036, to support its proposition that "MULTI" and "MAGNA" are not likely to cause confusion here. In that case this court dismissed an opposition involving the marks "MAGNAFOLD" and "MODERN-FOLD" on identical goods, folding doors. As distinct from the case here, the suffix "FOLD" in the New Castle case was held to be descriptive, and the differences in the remainder of the marks so dominated each as a whole that no confusion

was likely. We do not see that case controlling since we do not agree that the instant marks are merely descriptive of the goods, or that we can consider the marks here in other than their entireties. For the same reasons we do not find Air Products, Inc. v. Marquette Manufacturing Co., 301 F.2d 348, 49 CCPA 973, involving the marks "REDI-SET" and "REDI-ARC" for similar items of welding equipment, to advance appellee's position.

■ Appellee argued below that appellant's failure to oppose the registration of "MULTI-VOX" [3] for "complete equipment of an intercommunication system" shows that appellant will not be damaged by the instant registration of "MULTIVOX" for electric organs. The board ruled that failure to oppose was no estoppel, and we agree. Appellee does not argue estoppel here, but urges that the failure to oppose should be "at least of more than passing interest" in our consideration. We fail to see precisely what relation, conclusive of an opposite result, that matter has in this opposition. As the board noted, appellee was not in privity with the applicant which registered "MULTI-VOX," and thus that registration can avail appellee nothing here.

■ In deciding this appeal we have considered the right of appellant in protecting its prior subsisting marks to do so by opposing registration of a mark on goods which, although not identical, are reasonably related. A reasonable enlargement of appellant's business could include electric organs, and we believe that appellant's protection should encompass such growth that would permit inclusion of this product.[4] Contour

2. "ORGAVOX," Reg. No. 444,170, issued Aug. 22, 1950 to the Orgavox Organ Company, and "ElTronoVox," Reg. No. 605,833, issued May 10, 1955 to El-Tronics, Inc., a Pennsylvania corporation.

3. Reg. No. 687,866, issued Nov. 10, 1959 to Multi-Vox Ltd.-Multi-Vox Ltee. a Canadian corporation.

4. We consider appellant's application to register "MAGNAVOX" for electric organs, although filed after the taking of testimony in this case, and which application alleges a use subsequent to that of appellee's mark for electric organs, to be indicative of the reasonableness of our opinion that appellant's business could be expected to be enlarged to encompass such a related product, Contour Chair-Lounge Co. v. Englander Co., supra.

Chair-Lounge Co. v. Englander Co., 324 F.2d 186, 51 CCPA 833.

For these reasons we reverse the decision of the board.

Reversed.

WORLEY, Chief Judge, concurs in the result.