**TEXAS INSTRUMENTS INCORPORATED, Appellant,**

v.

**TECHNI–RITE ELECTRONICS, INC., Appellee.**

**Patent Appeal No. 7521.**

United States Court of Customs and Patent Appeals.
March 17, 1966.

---

Elliot A. Salter, Providence, R. I., for appellee.

Stevens, Davis, Miller & Mosher, Washington, D. C. (J. W. Gipple, Washington, D. C., of counsel), for appellant.

Elliot A. Salter, Providence, R. I., for appellee.

Before WORLEY, Chief Judge, and RICH, SMITH, and ALMOND, Judges.

SMITH, Judge.

The Trademark Trial and Appeal Board dismissed appellant-opposer's opposition to the registration of appellee's mark "techni-rite" for "data presentation equipment, namely, dimensional gauges and electronic recording and indicating apparatus and equipment used in association therewith." [1] (141 USPQ 932) The opposition was based on appellant's prior use of the marks "recti/rite" and "recti/riter" [2] and ownership of registrations [3] therefor for similar goods.

The sole issue is likelihood of confusion under 15 U.S.C. § 1052(d). The board found that while the goods of the respective parties were related, the marks were not likely to cause confusion or to cause mistake or to deceive.

Appellee argues that the goods, markets and distribution channels are different. Appellee points out that the respective goods have different utility, are technical in nature, are relatively expensive (450 dollars and up), and all prospective purchasers thereof would exercise discrimination in their selection.

While the record supports specific differences in the goods, this is not the test to be applied in determining likelihood of confusion. See Vandenburgh, Trademark Law & Procedure, Section 5.41 (1959). Similarly, markets and distribution channels are but factors which may be considered in resolving the sole issue before us, which is whether applicant-appellee's mark

* * * so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not

---

1. Application Ser. No. 129,057, filed Oct. 2, 1961.

2. The parties agree that all of the marks involved consist entirely of lower case letters. In the briefs and the board opinion, however, the marks are sometimes shown in capital letters.

3. Registrations Nos. 660,542, 674,174, 674,578 and 676,680.

abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive: * * * 15 U.S.C. § 1052(d).

We now consider the respective marks to determine whether it would be likely to regard the goods as coming from the same source. See Hoge, Lanham Act's Housekeeping Amendments, 52 T.M.R. 1245, 1249 (1962).

Considered in their entireties the marks in issue are similar because of their common use of the phonetic suffix "rite." The phonetic suffix "rite" suggests the words "right" and "write." In the first connotation it imparts to the respective marks the concept of correctness in the recording devices. In its second connotation it suggests that the record is written. As stated by appellee's witness Gipple:

> * * * we had felt that there was a rather broad usage in connection with the selling and marking of technical products with names that used the word "rite" as a suffix, and we brought this to the attention of Mr. Salter, our patent counsel, and suggested that he make a search restricted to technical products.

The result of the search made by Mr. Salter supported the above statement and was made of record. Exhibit A consists of 17 registrations of trademarks in which "rite" is the suffix. They support the testimony of appellee's witness Ondis that:

> * * * at the time the corporation was formed we had a rather clear plan as to the type and nature of the products that would be designed and manufactured by us. We decided to adopt a name that would have some relation to those products, and since the products were all technical in the sense that they were other than consumer, we decided to adopt a name that incorporated some portion of the word "technical" and we used "techni". We then decided to take the suffix "rite" which, as we analyzed it, had a dual meaning; the first meaning might be compared to the word "right" implying correctness or excellence, and the second meaning of the suffix "rite" alluding to the fact that the equipments were writers, recording instruments that wrote caligraphically.

Thus, as we consider the entire marks in issue it is necessarily against a background of the common and well recognized usage of trademarks in which the phonetic suffix "rite" has been used. The recognized meaning which it imparts to the entire mark is the same in all marks in issue but it is not sufficiently distinctive as applied to such marks to indicate either appellant or appellee as the source or origin of the goods to which it is applied.

Some effort was made by appellant to suggest that since the suffix "rite" was used in several of its trade names, i. e., "servo/riter", "oscillo/riter" and "event/riter" to designate particular of its products, the public had associated appellant as the source of goods on which marks ending with the suffix "rite" was employed. It is not seen on this record how this result can follow from such use. Instead, the record establishes that the suffix "rite" was a common suffix prior to appellant's adoption of its mark. Thus, taken alone, the suffix "rite" so lacks in distinctiveness that it cannot be said to support appellant's position. See Servo Corp. of America v. Servo-Tek Products Co., 289 F.2d 955, 48 CCPA 978.

We think we are supported in our decision by the results of a survey made by McGraw Hill Company for appellant. Appellant in its brief has summarized the record concerning this survey as follows:

> In November of 1962, McGraw Hill Research, a department of McGraw Hill Publishing Company, conducted an advertising survey including specifically an inquiry as to what "trade name" was used by the Opposer-Appellant, Texas Instruments Incorporated, on oscillographic recorders. Of the three hundred and eighty-six responses, two hundred and seventy-eight did not

know Texas Instruments made oscillographic recorders, eighty-two knew Texas Instruments made oscillographic recorders but did not know the "trade name", nine incorrectly identified the oscillographic recorder by the name "recti/riter" (which is Opposer-Appellant's trademark for galvanometric recorders), six correctly identified the oscillographic recorder as "oscillo/riters", three identified Opposer-Appellant's oscillographic recorder as "techni-writer" (Exhibits 1, 23a, 23b, 23c, 23d, 24, 25a and 25b; R. 47–61; R. 64–69).

We would add that the responses were received from a total of 2000 questionnaires which McGraw Hill sent to a randomly selected list of subscribers to its publication "Electronics." It seems but reasonable to assume that if appellant's position was correct more responses would have associated appellant with "rite" and "riter" type marks.

Distinctiveness of the marks in issue therefore must be found in their prefixes and in the effect of such prefixes in imparting distinctiveness to the entire mark with which they are used. The prefix "techni" in appellee's mark imparts to its mark as a whole an entirely different meaning than does appellant's prefix "recti."

Appellant cites The Magnavox Corp. v. Multivox Corp. of America, 341 F.2d 139, 52 CCPA 1025 where we found a likelihood of confusion between the marks "Magnavox" and "Multivox," as applied to the goods of the parties, and argues that the facts before us in that case are remarkably similar to the facts in the present case. Appellant states in its brief:

* * * the suffix "rite" is no weaker than the suffix "vox" as applied to the goods involved and that the prefixes "recti" and "techni" have as much in common as "multi" and "magna".

Appellee answers this argument as follows:

* * * the suffix "vox" is not thought to be nearly as descriptive as the suffix "Rite", nor are the prefixes "Techni" and "Recti" thought to be nearly as similar as the prefixes "Multi" and "Magna", both of which comprise the same number of letters, start with the same letter, and have generally the same meaning and significance. * * *

We find appellee's reasoning more persuasive and, concerning the marks, we think the facts in the present case are more similar to those in New Castle Products, Inc. v. American Door Co., 291 F.2d 954, 48 CCPA 1036, where we found no likelihood of confusion between the marks "Modernfold" and "Magna-Fold" when applied to similar goods. See also American Grease Stick Co. v. Chemplast, Inc., 341 F.2d 942, 52 CCPA 1103.

The board considered this survey evidence, discussed supra, as to whether or not it formed a basis from which a conclusion of actual confusion could be reached. We find, as did the board, that the survey falls short of establishing actual confusion. We point out, however, that even though the proofs fail to establish actual confusion, it is sufficient to sustain an opposition if the proofs establish a "likelihood" of confusion, mistake or deception of purchasers. Even when tested against this concept, the survey proofs are insufficient and unpersuasive.

■ Considering the marks as applied to the goods of the parties, as required by the terms of 15 U.S.C. § 1052(d), including the technical nature of the goods, their high cost, their respective markets and channels of distribution, the discrimination of prospective purchasers, and the differences in the marks, we agree with the decision of the Trademark Trial and Appeal Board and it is therefore affirmed.

Affirmed.

MARTIN, J., took no part in the consideration or decision of this case.