56 CCPA

**SAL IANNELLI, INCORPORATED, Appellant,**

v.

**Morris WASSER, Appellee.**

**Patent Appeal No. 8102.**

United States Court of Customs and Patent Appeals.

July 10, 1969.

Stevens, Davis, Miller & Mosher, Washington, D. C., for appellant, J. W. Gipple, Washington, D. C., of counsel.

Murray Schaffer, New York City, for appellee.

Before WORLEY, Chief Judge, RICH, ALMOND and BALDWIN, Judges.

BALDWIN, Judge.

This is an appeal by opposer, Sal Iannelli, Incorporated, from the decision [1] of the Trademark Trial and Appeal Board dated October 4, 1966, dismissing Opposition No. 44,440 to the registration of ANALITE as a trademark for applicant's goods described in the application as "exposure control electronic device for use in printing photographic negatives." [2]

The sole issue here is whether appellee's trademark, ANALITE, when used in connection with its photo electronic instruments, so resembles appellant's mark ANALYTE [3] as used on its color com-

1. Reported at 151 USPQ 653.

2. Application serial No. 154,540, filed October 4, 1962.

3. Registration No. 611,791, issued September 6, 1955.

parator units and related equipment as to be likely to cause confusion, mistake or deception of purchasers as set forth in Section 2(d) of the Trademark Act of 1946.

The record shows that, since the early nineteen fifties, opposer has sold a color comparator instrument under the mark ANALYTE. The product is a precision instrument which contains two opposing light sources which will exaggerate any differences in the color of two or more samples, such as textile materials, thereby enabling the viewer to ascertain color variations between such materials. Opposer states that it sells this product to all types of industries which deal in color; the only advertising of record, other than a product listing in the "Thomas Register," appeared in the May, 1959 issue of "Textile Buyer's Guide," which is obviously directed to the textile industry. Opposer's witness admitted that it has not sold its color comparator in the photographic field. The witness, however, states that since 1959 it has been continuously experimenting on an overhead daylight lamp, which has utility in this field since it will simulate true daylight for use in color photography. While opposer has produced invoices showing that it made sales for experimental purposes, in 1959, of this overhead lamp, and that the term ANALYTE appeared on an invoice in connection therewith, the record is entirely insufficient to establish either that opposer has any continuing trade in this experimental product or that the mark ANALYTE actually appeared thereon. Opposer's witness has also testified that its chief competitor markets both color comparators and overhead daylight lamps.

The record shows that, since April, 1962, applicant has marketed a precision electronic device which will analyze and remember the light exposure value of a good photographic print, which value may subsequently be used in repetitive darkroom printing operations. This product is sold to the photographic industry, for the most part, through a national distributor of photographic supplies. ANALITE exposure control devices have been advertised in leading publications on photographs.

Opposer's priority of use of its mark for color comparators is established by the record and it is agreed that the marks ANALITE and ANALYTE are virtually indistinguishable. The question for consideration, therefore, is whether or not the goods of the parties are so related that, when these substantially similar marks are used thereon, there would be a likelihood of confusion or mistake.

Although opposer urges that its color comparator and applicant's electronic device are both photo-electronic devices having to do with lighting and are sold through the same trade channels, namely, photo supply companies, to industries dealing in color, we feel that the products here involved are specifically different precision instruments which move through different trade channels to a different class of purchasers for basically different purposes.

The mere fact that both products may have some application to color control is an insufficient basis for holding that there would be a likelihood of confusion in view of the other differences in the goods here involved. See Wilson Jones Company v. Wildman Jacquard Co., 142 USPQ 287 (TTAB1964).

In Texas Instruments, Inc. v. Techni-Rite Electronics, Inc., 357 F.2d 398, 401, 53 CCPA 1019, 1023 (1966) this court in dismissing an opposer's appeal stated:

" * * * Considering the marks as applied to the goods of the parties, as required by the terms of 15 U.S.C. § 1052(d), including the technical nature of the goods, their high cost, their respective markets and channels of distribution, the discrimination of prospective purchasers, and the dif-

ferences in the marks, we agree with the decision of the Trademark Trial and Appeal Board and it is therefore affirmed. * * * "

We feel that holding applicable here.

Affirmed.

ALMOND, J., concurs in the result.

WORLEY, C. J., took no part in the decision of this case.