### R. J. REYNOLDS TOBACCO COMPANY, Appellant,

v.

### AMERICAN BRANDS, INC., Appellee.

### Patent Appeal No. 9102.

United States Court of Customs and Patent Appeals.

April 4, 1974.

R. Bradlee Boal, Cooper, Dunham, Clark, Griffin & Moran, New York City, attorney of record, for appellant.

Marie V. Driscoll, Lenore B. Stoughton, Rogers, Hoge & Hills, New York City, attorneys of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board, 173 USPQ 446 (1972), dismissing appellant's opposition to appellee's application serial No. 355,289, filed March 26, 1970, for the registration of ADVANCE for cigarettes. Opposition is predicated on appellant's registration No. 784,715, issued February 9, 1965, of VANTAGE for cigarettes. We affirm.

First use and first use in interstate commerce from March 10, 1970, are alleged in appellee's application. Concerning appellee's sales, the board found that:

> Applicant has sold cigarettes under the mark "ADVANCE" periodically since February 1970, but only in Los Angeles, California and Providence, Rhode Island. Sales have not been "commercially substantial". Applicant has not advertised or promoted "ADVANCE" cigarettes and has not test marketed these cigarettes.[1]

The mark was published for opposition in the *Official Gazette* on July 7, 1970.

Appellant is the prior user. Appellant's sales of cigarettes from 1965 to 1970 were "extremely limited" and were conducted without any test marketing or advertising. In December, 1969, or January, 1970, a supplier of filter materials and filter configurations offered appellant a "unique" filter. Having found that the filter could deliver full flavor with low tar and nicotine, the initial step was to select a trademark which would communicate this feature of the cigarette to the consuming public. Desiring to move quickly, appellant selected a mark from its name bank which it thought connoted "an advance, an advantage . . . superiority, something different, something new." An agreement with the filter supplier was reached in February or March of 1970. On April 17, 1970, appellant announced that VANTAGE cigarettes would be nationally distributed. Sales commenced July, 1970, only in Portland, Oregon, and Syracuse, New York, since at that time adequate production facilities for national distribution were not yet available. Nationwide introduction commenced November 2, 1970, with advertising beginning one week prior thereto.

Appellant's notice of opposition was timely filed (apparently through extensions of time) on November 12, 1970. According to the deposition of the product manager of VANTAGE cigarettes, a one percent market share was secured within approximately eight weeks after nationwide introduction; sales thereafter increased at a moderate rate; use of VANTAGE was extended to a menthol filter cigarette in April or May of 1971; millions of dollars in advertising were expended in the promotion of VANTAGE cigarettes through various media; and extensive print advertising was undertaken in 1971. He also stated in a deposition taken on May 13, 1971, that eighty million match books bearing a representation of VANTAGE cigarette packages were authorized for distribution throughout 1971.

In holding that there was no likelihood of confusion between the marks, the board found that the marks appeal to cigarette customers in quite a different way, are everyday words with distinct differences in sound and appearance, have well-understood meanings which are not synonymous, do not create similar commercial impressions, and are readily distinguished by the public.

In addition to arguing similarity of sound and appearance, appellant particularly emphasizes similarity in meaning and its extensive advertising and promotional efforts of VANTAGE cigarettes. In support of its position, appellant cites Hancock v. American Steel and Wire Company of New Jersey, 203 F.2d 737, 40 CCPA 931 (1953), which held that TORNADO for wire fencing was likely to be confused with CYCLONE for wire fencing.

Although supporting the board's decision concerning the dissimilarities between the marks, appellee argues that evidence of use of appellant's mark may

---

1. This finding by the board is apparently derived from a Request for Admission made by appellant and a Notice of Reliance thereon according to Rule 2.120(b) of the Trademark Rules of Practice, but no response to the Request for Admission is of record. Neither party asserts any error in the board's finding, or any effect such finding has upon the alleged first use of March 10, 1970. See Rockwood Chocolate Co., Inc. v. Hoffman Candy Company, 372 F.2d 552, 54 CCPA 1061 (1967).

not be considered for the period subsequent to either the date of applicant's first use or the filing date of its application for registration.

### The Issue of Terminal Date for Evidence Bearing on the Question of Likelihood of Confusion

Before reaching the issue of likelihood of confusion, the threshold argument raised by appellee with respect to appellant's evidence of use must be considered. Essentially, the question is: through what point in time is evidence bearing on the issue of likelihood of confusion admissible? The question of whether likelihood of confusion *at the time of opposition* is not sufficient to defeat registration was recognized in Gillette Company v. "42" Products Ltd., Inc., 396 F.2d 1001, 55 CCPA 1347 (1968), but was left unanswered by the majority. In a concurring opinion, Judge Almond stated:

I would reach the issue, avoided by the majority, of whether the time for determining the possibility of likelihood of confusion is the date of first use of the mark sought to be registered or the date of the opposition proceedings.

The statutory command concerning likelihood of confusion is expressed in prospective language: . . . This means that registration is prohibited if there is today a likelihood of confusion, and the question of whether confusion was likely ten or twenty years ago is irrelevant.

Section 2(d) does not speak of priority but rather of conditions extant at the time the application for registration is before the Patent Office. Contour Chair-Lounge Co., Inc. v. Englander Company, Inc., 324 F.2d 186, 51 CCPA 833 [1963].

"Today" should be interpreted in light of section 15 U.S.C. § 1071 which restricts evidence in appeals to this court from the Trademark Trial and Appeal Board to that produced before the Patent Office. Obviously it would serve no useful purpose to deny registration because in the past there existed a likelihood of confusion when, during the time registration is under consideration, there exists no likelihood of confusion. Conversely, it would frustrate the purpose of the statute [2] to permit registration when, during the time registration is under consideration, there is a likelihood of confusion—although in the past there existed no likelihood of confusion. Exclusion of evidence bearing on the issue of likelihood of confusion for the period that registration is under consideration would, if followed by registration, merely force the opposing party to resort to a cancellation proceeding.

This court has, in fact, considered evidence bearing on the issue of likelihood of confusion covering a period subsequent to the date of the application for registration in a number of cases. In Industria Espanola De Perlas Imitacion v. National Silver Co., 459 F.2d 1049, 59 CCPA 1058 (1972) an application for registration was filed March 23, 1966, and the notice of opposition was filed May 29, 1967.[3] The court in reaching its decision that there was a likelihood of confusion considered evidence of sales and advertising to the end of 1967. Myrurgia, S. A. v. Comptoir De La Parfumerie, S. A. Ancienne Maison Tschanz, 441 F.2d 673, 58 CCPA 1167 (1971) involved an opposition proceeding against an application for registration filed July 28, 1964. In deciding that there was a

---

2. "To protect trade-marks, therefore, is to protect the public from deceit, to foster fair competition, and to secure to the business community the advantages of reputation and good will by preventing their diversion from those who have created them to those who have not. This is the end to which this bill is directed." H.R.Rep.No.219, 79th Cong. 1st Sess. 3 (1945): S.Rep.No.1333, 79th Cong. 2d Sess. 4 (1946).

3. The filing date of the notice of opposition does not appear in either the decision of this court or that of the Trademark Trial and Appeal Board. However, it is a matter of verifiable certainty from the case record of this court and may, in the exercise of the court's discretion, be judicially noticed.

likelihood of confusion, the court considered opposer's advertising expenditures and sales for the period 1964 through September 30, 1966. In Geigy Chemical Corporation v. Atlas Chemical Industries, Inc., 438 F.2d 1005, 58 CCPA 972 (1971) an application for registration was filed March 19, 1965. The holding in favor of the opposer that there was a likelihood of confusion was based on consideration of sales and advertising expenditures for the period from 1960 through 1966.

The correctness of this approach finds support in decisions of this court on sufficiency of the evidence under 15 U.S.C. § 1052(f) to overcome an allegation of descriptiveness under section 1052(e) and under 1052(d) regarding concurrent use registration. In re Thunderbird Products Corporation, 406 F.2d 1389, 56 CCPA 969 (1969) involved a mark which was suitable for registration as of the application filing date, but was determined by the Patent Office to be descriptive on the basis of evidence running almost two years later. This court affirmed the denial of registration, holding "that the time when the issue of registrability is under consideration extends at least to the time the application is acted on in the Patent Office." The court relied on two prior cases: DeWalt, Inc. v. Magna Power Tool Corp., 289 F.2d 656, 48 CCPA 909 (1961), where it was stated that descriptiveness "must be judged and the right to registration decided on the basis of the factual situation as of the time when registration is sought," the court observing that "Trademark rights are not static" and that "words not descriptive today may, through usage, be descriptive tomorrow"; McCormick & Company, Inc. v. Summers, 354 F.2d 668, 53 CCPA 851 (1966), where the court said that "registrability of a mark must be determined on the basis of facts as they exist at the time when the issue of registrability is under consideration." [4]

In concurrent use proceedings, this court, in In re Beatrice Foods Co., 429 F.2d 466, 57 CCPA 1302 (1970), was confronted with the question of the time prior to which evidence of trademark usage must be established in order to determine the territorial rights of both parties. The court, describing this as "the cut-off day for establishing rights by a showing of trademark use," held the "cut-off day" to be "the close of the testimony period," citing *McCormick* and *Thunderbird,* supra.[5]

In view of the foregoing, we hold that evidence bearing on the issue of likelihood of confusion is admissible for the period extending through the latest date permitted by the procedural rules of the Patent Office for taking testimony and presenting evidence.

*The Issue of Likelihood of Confusion*

Turning to the issue of likelihood of confusion among purchasers, all evidence of record concerning appellant's advertising expenditures and sales of VANTAGE cigarettes and extension of use of its mark to a menthol filter ciga-

---

4. Although not cited in the *Thunderbird Products Corp.* case, the court in Roselux Chemical Company, Inc. v. Parsons Ammonia Company, Inc., 299 F.2d 855, 49 CCPA 931 (1962) also stated that registration of a descriptive mark "must be determined on the basis of the facts as they exist at the time when the issue of registrability is under consideration."

5. Appellee has cited a number of cases for its proposition that evidence of use by an opposer cannot be considered for the period subsequent to either an applicant's first use or the filing date of the application. However, cases such as Williamson-Dickie Manu-

facturing Company v. Carl-Morris Mfg. Inc., 114 USPQ 257 (P.O. Ex. in Chief 1957), were concerned with the issue of priority of use and, as appellee well states, "priority has never been an issue in this opposition . . .." Scholl Mfg. Co., Inc. v. Principle Business Enterprises, Inc., 150 USPQ 217 (TTAB 1966) involved expansion of opposer's use of its mark to cover substantially different goods, which it did not commence manufacturing until after the applicant began using its mark on the same goods (slippers)—a different situation from that involved here, where appellant's expansion of use of its mark was merely from regular to menthol cigarettes.

rette is to be considered. Since the marks involved are applied to identical goods in identical channels of trade, the issue is to be determined on the basis of the similarity (or lack thereof) of sound, appearance, and meaning of the marks themselves. Appellant admits that those who buy cigarettes on a regular basis are not likely to confuse the two marks, but argues that the "casual purchaser" (whom it does not define) is significant in the one percent market share VANTAGE has secured. While we would agree that the "casual purchaser" might be a factor to be considered, there is no evidence to show either that the factor here would be "significant" or that a "casual purchaser" is likely to be any more confused than a regular purchaser.

■ The fallibility of memory of the purchaser is, of course, a factor to be considered. Geigy Chemical Corporation v. Atlas Chemical Industries, supra. However, the differences between the marks here are persuasive that fallibility of memory would not be a significant factor in determining the likelihood of confusion. Indeed, from the standpoint of sound and appearance, the only real similarity is the syllable "van," and the marks as a whole are readily distinguishable.

Concerning similarity in meaning, appellant argues that VANTAGE connotes superiority of a cigarette having full flavor with low tar and nicotine, and that ADVANCE would generate the same, or at least substantially the same, connotation. However, VANTAGE connotes a benefit or gain to the purchaser, while ADVANCE connotes progressiveness of the product itself—a different commercial impression.[6]

■ Accordingly, we hold that there is no likelihood of confusion between the marks.

The decision of the board is affirmed.

Affirmed.

---

6. Hancock v. American Steel and Wire Company of New Jersey, supra, which involved the marks "TORNADO" and "CYCLONE" is, therefore, inapposite.