NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

(Opposition Nos. 91183487 and 91183509)

**ANDRES GUTIERREZ ESTRADA,**
*Appellant,*

**v.**

**TELEFONOS DE MEXICO, S.A.B. DE C.V.,**
*Appellee.*

_____

2010-1558

_____

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

_____

Decided: November 10, 2011

_____

ANDRES GUTIERREZ ESTRADA, of Zapopan, Jalisco, Mexico, pro se.

JULIE B. SEYLER, Abelman Frayne & Schwab, of New York, New York, for appellee. With her on the brief was LAWRENCE E. ABELMAN.

_____

Before LOURIE, LINN, and PROST, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Andres Gutierrez Estrada appeals from the final decision of the United States Patent and Trademark Office ("PTO") Trademark Trial and Appeal Board ("Board"), which sustained the oppositions of Telefonos De Mexico, S.A.B. de C.V. ("Telefonos") to Estrada's applications to register the mark AUDITORIO TELMEX. Because the Board did not err in determining that a likelihood of confusion existed between Estrada's AUDITORIO TELMEX mark and Telefonos' TELMEX mark with respect to the particular services at issue, we affirm.

## BACKGROUND

On September 2, 2007, Estrada filed two applications at the PTO to register the mark AUDITORIO TELMEX on the Principal Register. *Telefonos de Mexico, S.A.B. de C.V. v. Estrada*, Opposition Nos. 91183487 & 91183509, 2010 WL 2783897, at \*1 (T.T.A.B. June 30, 2010) ("*Board Op.*"). Both applications were based on a statement of Estrada's *bona fide* intention to use the mark in commerce. *See* 15 U.S.C. § 1051(b). In the first application, Serial No. 77270292, Estrada stated his intention to use the mark in connection with "arena services, namely, providing facilities for sports, concerts, conventions and exhibitions" in International Class 43. *Board Op.*, at \*1. In the second opposed application, Serial No. 77270301, Estrada stated his intention to use the mark in connection with a number of services related to entertainment and live performances in International Class 41.[1]

---

[1] Specifically, Estrada stated his intention to use the mark in connection with the following services:

Telefonos opposed both applications on the grounds of priority and likelihood of confusion based on its common law use of its TELMEX mark in the United States in connection with telecommunications and other services discussed *infra*. In support of its opposition before the Board, Telefonos submitted a brief and evidence, including testimony and accompanying exhibits from Peter Rivera, a regional sales director for Telmex USA, LLC, a wholly owned subsidiary and related company of Telefonos. In contrast, Estrada submitted neither a brief nor supporting evidence before the Board.

Based on Mr. Rivera's testimony, the Board found that Telefonos is a major telecommunication company based in Mexico that has used the TELMEX mark in Mexico since 1947. Based on Telefonos' "widespread and

---

entertainment in the nature of ballet performances; entertainment in the nature of visual and audio performances, namely, musical band, rock group, gymnastic, dance, and ballet performances; entertainment, namely, live performances by a musical band; entertainment, namely, live performances by musical bands; entertainment, namely, live performances by rock groups; live performances featuring prerecorded vocal and instrumental performances viewed on a big screen; performance hall rental services; planning arrangement of showing movies, shows, plays or musical performances; presentation of live show performances; presentation of musical performance; booking of seats for shows and booking of theatre tickets; rental of portable theatre seating; entertainment in the nature of visual and audio performances, and musical, variety, news and comedy shows; providing facilities for movies, shows, plays, music or educational training; entertainment in the nature of dance performances.
*Board Op.*, at *1.

extensive use of the TELMEX mark in Mexico for six decades," the Board found it unlikely that any resident of Mexico would not know of the TELMEX mark. *Id.* at \*3. The Board found that Telefonos sponsors a large concert arena in Guadalajara, Mexico, under the mark AUDITORIO TELMEX. Ranked as one of the top five entertainment concert arenas in the world, it has served as a performance venue for noteworthy artists such as Plàcido Domingo, Bob Dylan, and Ricky Martin. The arena was also used to host the 2008 Latin American MTV Music Awards, which was telecast worldwide, including in the United States, over the Internet.

As the Board found, Telefonos began selling telephone calling cards in the United States in 2000 and currently sells about six million such cards per year. The calling cards, which enable the holder to place calls from the United States to Mexico, display the TELMEX mark together with artwork and promotions for Telefonos-sponsored sports and entertainment events, including auto racing, tennis, and soccer. The cards are available for sale at retail outlets throughout the United States. They are also available for sale on the Internet along with other items related to the sponsored events, such as model race cars and soccer jerseys—all of which bear the TELMEX mark. In addition, Telefonos provides voice, data, video and Internet services in the United States under the TELMEX mark, although Telefonos did not provide evidence to establish that it began to offer those services prior to Estrada's filing date.

Estrada has resided in Zapopan, Jalisco, Mexico, since 1980. Although he did not submit any evidence or a brief before the Board, Estrada filed responses to Telefonos' requests for admissions and interrogatories. The Board found that these responses "display[ed] a pattern of

evasion" and were "disingenuous and lacking in credibility." *Id.* at *4. For example, even though Estrada lived in Mexico for nearly thirty years and Telefonos' use of its TELMEX mark has been ubiquitous in Mexico for that entire period, Estrada essentially denied any knowledge of Telefonos' prior use of TELMEX. Moreover, despite having lived within ten miles of the world-class AUDITORIO TELMEX arena since 1980, Estrada essentially denied any prior knowledge of the use of Telefonos' mark in connection with the arena. In spite of these facts, when asked why he chose the AUDITORIO TELMEX mark for use in connection with arena and entertainment services, he responded, "Because AUDITORIO TELMEX sounds good for the services upon which it will be used. Is [sic] an easy listening phrase." *Id.* On the basis of those responses and numerous others, *id.* at *4-5, the Board concluded that Estrada had been "evasive and disingenuous" during the prosecution of his applications and the opposition proceedings, *id.* at *4.

On June 30, 2010, the Board issued a non-precedential opinion sustaining the oppositions as to both of Estrada's applications. The Board first determined that Telefonos established priority as to both classes of services based on its use of its TELMEX mark in the United States prior to the filing date of Estrada's applications. The Board then analyzed the likelihood of confusion between Telefonos' TELMEX mark and Estrada's AUDITORIO TELMEX marks by applying the framework set forth in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973). As discussed further *infra*, the Board weighed the *DuPont* factors and found that the marks were highly similar, that Telefonos' mark is inherently distinctive, that the services of the parties are related, and that Estrada acted in bad faith. The Board thus concluded that there existed a likelihood of confusion

between Telefonos' TELMEX mark when used in connection with telephone calling card services and Estrada's AUDITORIO TELMEX mark when used in connection with both the arena services and the entertainment services identified in Estrada's applications.

We have jurisdiction over Estrada's appeal under 15 U.S.C. § 1071(a) and 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

The Board's determination whether a likelihood of confusion exists under § 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), is a question of law based on underlying findings of fact. *Citigroup Inc. v. Capital City Bank Grp. Inc.*, 637 F.3d 1344, 1349 (Fed. Cir. 2011). We review the Board's ultimate legal conclusion *de novo*, and we review the underlying factual findings under the substantial evidence standard. *In re Majestic Distilling Co.*, 315 F.3d 1311, 1314 (Fed. Cir. 2003); *see also Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1569 (Fed. Cir. 1983). When reviewing for substantial evidence, we take the entire record into account and ask whether a reasonable person might find that the evidentiary record supports the Board's conclusion. *On-Line Careline, Inc. v. America Online, Inc.*, 229 F.3d 1080, 1085-86 (Fed. Cir. 2000). The possibility that inconsistent conclusions may be drawn from the same record does not render a finding unsupported by substantial evidence. *Id.* at 1086; *see also In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000).

Under § 2(d) of the Lanham Act, registration of a mark must be refused if it "so resembles . . . a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause

confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d) (2006). The existence of a likelihood of confusion between two marks under § 2(d) is determined on a case-by-case basis, aided by the application of the *DuPont* factors. *On-Line Careline*, 229 F.3d at 1084; *see also DuPont*, 476 F.2d at 1361. Not all of the *DuPont* factors are relevant or of similar weight in every case, however, and any one factor may control a particular case. *Majestic Distilling*, 315 F.3d at 1315.

On appeal, Estrada asserts numerous errors in the Board's factual findings underlying its conclusion that a likelihood of confusion exists. Telefonos, in response, argues that the Board's factual findings are supported by substantial evidence and that the Board correctly sustained Telefonos' oppositions. As we shall explain, we conclude that the Board's factual determinations are supported by substantial evidence and that the Board correctly sustained Telefonos' oppositions based on the existence of a likelihood of confusion.

Before reaching the merits of this appeal, we address Estrada's argument, raised for the first time on appeal, that Telefonos failed to prove its standing and interest before the Board. Estrada contends that Telefonos lacks standing because the now-pending trademark application for TELMEX was filed at the PTO by Telefonos de Mexico, S.A. de C.V, a different entity from the opposer in the present appeal, Telefonos de Mexico, S.A.B. de C.V. Without deciding the relationship between these entities, we note that the Board held that Telefonos established standing based on its common law use of TELMEX in the United States, not based on any registered or applied-for mark. *Board Op.*, at *2. Accordingly, even if the registrant of the TELMEX mark were unrelated to Telefonos,

as Estrada contends, that would not affect Telefonos' standing as opposer.

Turning to the merits, we first consider the matter of priority. The Board found that Telefonos established its priority in both opposition proceedings by pleading and establishing use of its distinctive TELMEX mark in the United States in connection with telephone calling card services prior to the September 2, 2007, filing date of Estrada's applications. *Id.* at *2. Substantial evidence supports this finding. Mr. Rivera testified that Telmex USA was formed in 1997. Appellee App., Exh. DD, at 7. He further testified that Telmex USA began selling calling cards in the United States in approximately 2000 and sells about six million such cards annually throughout the United States. *Id.* at 26. Mr. Rivera's oral testimony amounts to substantial evidence in support of the Board's priority determination. *See Powermatics, Inc. v. Globe Roofing Prods. Co.*, 341 F.2d 127, 129 (CCPA 1965) ("[O]ral testimony, if sufficiently probative, is normally satisfactory to establish priority of use in a trademark proceeding.").

We next review the Board's conclusion that a likelihood of confusion exists between Telefonos' TELMEX mark when used in connection with telephone calling card services and Estrada's AUDITORIO TELMEX mark when used in connection with the arena and entertainment services identified in his applications. We address in turn each of the *DuPont* factors considered by the Board.

The Board first evaluated the similarity of the marks in their entireties. *Board Op.*, at *6-7. The Board noted that Estrada's applications disclaimed the AUDITORIO portion of his mark, which is at least highly descriptive of his services. The Board found that Telefonos' TELMEX

mark is identical to the dominant and only distinctive element in Estrada's mark and that the two marks are highly similar overall.  This finding is both supported by the record and consistent with our case law.  Although marks must be compared in their entireties, "there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties." *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985).

The Board then considered the fame or strength of Telefonos' mark.  *Board Op.*, at *7-8.  The Board found that although Telefonos' evidence was insufficient to prove that its TELMEX mark is famous in the United States, the record nonetheless established that TELMEX is a strong, inherently distinctive mark in the United States.  The Board noted that it had no evidence that anyone other than Telefonos has ever used TELEMEX for any purpose.  In support of this finding, the Board noted that Estrada, in response to Telefonos' interrogatories, conceded that he was unaware that anyone other than himself or Telefonos has the right to use TELMEX.  Appellee App., Exh. E, Interrog. No. 16.  Moreover, the unchallenged finding by the Board that TELMEX is a coined term, and is therefore inherently distinctive, further establishes the mark's strength.  *See In re Chippendales USA, Inc.*, 622 F.3d 1346, 1350 n.2 (Fed. Cir. 2010).  Substantial evidence thus supports the Board's finding that TELMEX is a strong, inherently distinctive mark in the United States.

The next *DuPont* factor considered by the Board was the similarity or dissimilarity of the services.  *Board Op.*, at *8-9.  As noted *supra*, the Board found that Telefonos' calling cards display promotions for events and activities

sponsored by Telefonos, including sporting and other entertainment events. The Board found that these promotions create an association between Telefonos' telecommunications services and entertainment services. The Board further found that Telefonos offers a variety of telecommunications services in the United States including voice, data, video, and Internet services, thus proving an association of the TELMEX mark with a broad range of telecommunication services, including Internet services. Moreover, the Board noted that events such as the 2008 Latin American MTV Music Awards have been televised from Telefonos' AUDITORIO TELMEX arena over the Internet into the United States, which supports an association between Telefonos' telecommunications services and Estrada's arena services and entertainment services. Based on these findings, the Board concluded that relevant consumers, when confronted with similar marks in conjunction with both types of services, would likely believe that the services are associated with a common source.

Estrada contends on appeal that entertainment services and arena services are not related to telecommunications services, and that Telefonos failed to establish that the promotions displayed on its calling cards would create an association between these services. We disagree with Estrada and conclude that substantial evidence supports the Board's findings. In *Recot, Inc. v. Becton*, we explained that, "even if the goods in question are different from, and thus not related to, one another in kind, the same goods can be related in the mind of the consuming public as to the origin of the goods." 214 F.3d 1322, 1329 (Fed. Cir. 2000); *see also On-Line Careline*, 229 F.3d at 1086 (applying *Recot* in analyzing the similarity of services). The Board considered the evidence submitted by Telefonos, including the testimony of Mr. Rivera and the

images of calling cards bearing Telefonos' TELMEX mark and depicting sporting and other entertainment events sponsored by Telefonos. *Board Op.*, at *9; Appellee App., Exhs. 3-4. Although telecommunications services are different in kind from arena and entertainment services, the Board properly relied on substantial evidence in the record to find that the services, when used in connection with the marks at issue, would likely be related in the mind of the consuming public.

Estrada assails the Board's factual finding on numerous other bases. For example, Estrada contends that the Board, in analyzing the similarity of the services, violated the principle of territoriality by considering the fame of Telefonos' TELMEX mark in Mexico. Contrary to Estrada's contention, however, the Board explicitly stated that the fame of Telefonos' TELMEX mark in Mexico was relevant only to its finding of bad faith. *Board Op.*, at *7. And, as noted *infra*, the Board's finding of bad faith was unnecessary to its conclusion that a likelihood of confusion existed. Estrada's contention thus lacks merit. Estrada moreover contends that the Board erred by considering certain of Telefonos' evidence that was dated after the filing date of Estrada's applications. Our precedent is clear, however, that "evidence bearing on the issue of likelihood of confusion is admissible for the period extending through the latest date permitted by the procedural rules of the [PTO] for taking testimony and presenting evidence." *R.J. Reynolds Tobacco Co. v. Am. Brands, Inc.*, 493 F.2d 1235, 1238 (CCPA 1974). Additionally, Estrada asserts on appeal that Mr. Rivera's testimony lacks probative value because he is insufficiently familiar with Mexico. Before the Board, however, Estrada provided no evidence to rebut Mr. Rivera's testimony, and in any event, as noted, the Board considered evidence regarding the fame of Telefonos' TELMEX mark in Mexico

only on the question of bad faith. None of Estrada's arguments alters our conclusion that the Board's finding is supported by substantial evidence.

Finally, the Board considered the matter of bad faith. *Board Op.*, at \*9-10. The thirteenth *DuPont* factor permits the Board to weigh "[a]ny other established fact probative of the effect of use." *DuPont*, 476 F.2d at 1361. An applicant's bad faith is potentially relevant in the likelihood-of-confusion analysis. *See L.C. Licensing Inc. v. Berman*, 86 U.S.P.Q. 2d (BNA) 1883, 1890 (T.T.A.B. 2008); *see also Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 587 (2d Cir. 1993) ("Where a second-comer acts in bad faith and intentionally copies a trademark or trade dress, a presumption arises that the copier has succeeded in causing confusion."). As noted *supra*, the Board found that Estrada had been "evasive and disingenuous" by essentially denying any prior knowledge of Telefonos' TELMEX mark. The Board concluded that Estrada exhibited "not only bad faith but a general lack of respect for the application and opposition process." *Board Op.*, at \*10. The Board noted that although it would have found a likelihood of confusion on the present facts even without a finding of bad faith, were this a close case Estrada's bad faith would have tipped the balance to a finding of a likelihood of confusion. We conclude that substantial evidence supports the Board's finding of Estrada's bad faith. As the Board noted, if Estrada had an explanation for his implausible responses, he could have provided that explanation by submitting evidence at trial.

Taken together, the Board's factual findings—all of which point to the existence of a likelihood of confusion—are supported by substantial evidence in the record. We therefore disagree with Estrada and conclude that the

Board did not err in finding that a likelihood of confusion exists between Telefonos' TELMEX mark used in connection with calling card services and Estrada's AUDITORIO TELMEX mark used in connection with the arena services and entertainment services identified in his applications.

## CONCLUSION

We have considered all of Estrada's remaining arguments and find them unpersuasive. Accordingly, we affirm the determination of the Board.

**AFFIRMED**