40 C.C.P.A. (Patents)

## MYERS et al. v. POLK MILLER PRODUCTS CORP.

Patent Appeals No. 5878.

United States Court of Customs and
Patent Appeals.

Jan. 14, 1953.

John F. Brezina, Chicago, Ill. (Robert I. Dennison, Washington, D. C., of counsel), for appellant.

Mason, Fenwick & Lawrence, Washington, D. C. (Edward G. Fenwick and Boynton P. Livingston, Washington, D. C., of counsel), for appellee.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of an Examiner-in-Chief, acting for the Commissioner of Patents by delegation under Reorganization Plan No. 5 of 1950, 5 U.S. C.A. § 133Z–15 note, 15 Fed.Reg. 3174, reversing the decision of an Examiner of [Trade-Mark] Interferences who dismissed the petition of appellee to cancel the registration to appellant of a certain trade-mark hereinafter described. The Examiner-in-Chief held that the trade-mark should be cancelled and the appeal to this court followed.

An unusual state of facts necessitates a recital which properly may be made at this juncture.

First, however, it may be said that the mark of the petitioner (appellee here), Registration 226,819, consists of the words "Sure Shot," shown in the certificate of registration printed in capital letters with black-faced type. It was registered April 19, 1927, under the Act of February 20, 1905 for "Capsules and a liquid preparation for dogs." The registration was renewed to appellee April 19, 1947, and was republished under the Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq., on November 9, 1948.

The mark of Myers (appellant here), Registration 273,954, consists of a silhouette of a female holding a bow and arrow, with the words "Sure Shot" printed in capital letters with somewhat fanciful black-faced type, arranged in curved formation above the figure. It was registered August 19, 1930, under the Act of February 20, 1905, for use on a "Preparation for the Treatment of Dandruff" and was republished under the Trade-Mark Act of 1946 on July 13, 1948 but, unfortunately for appellant, it was not renewed on the date of its expiration, appellant not having complied with the Patent Office Trade-Mark Rules relating to renewals.

Registration No. 273,954 shows on its fact that it was issued to "Harry H. Myers, * * * doing business * * * as Mobile Barber and Beauty Supply House." It was republished under the Act of 1946 "by Harry H. Myers, doing business as Sure-Shot Laboratories."

It appears from the record that Myers was doing a barber's supplies business at Mobile, Alabama; that it was expanded to include supplies for beauty parlors; and that his liquid for treating dandruff was developed, manufactured and distributed on a small scale before the application was filed which culminated in his Registration No. 273,954. Later he established a laboratory or laboratories for the manufacture of his dandruff treatment material on the second floor of the building, owned by him, in which he was carrying on the barber and beauty supplies business. Both businesses were carried on by him for some time, but finally—the exact date is not defi-

nitely established in the record—he sold the barber and beauty supplies business but retained the manufacturing business and continued to make the liquid in his laboratories, applying to it the trade-mark in issue.

Harry H. Myers died October 22, 1947. His wife, appellant here, was his sole legatee, and was the executrix of his will. On July 23, 1948, final settlement of the estate was made in the Probate Court of Mobile County, Alabama.

Appellee's petition for cancellation appears to have been filed in the Patent Office December 20, 1948, and appellant's answer thereto on March 1, 1949.

Both parties took testimony, the final deposition on behalf of appellee seemingly being concluded on July 1, 1949.

On December 20, 1949 Malvina D. Myers was formally substituted as a party in place of Harry H. Myers, deceased.

The decision of the Examiner of [Trade-Mark] Interferences dismissing the petition for cancellation was rendered May 29, 1950, and the decision of the Examiner-in-Chief reversing it on October 31, 1950. Appellant Myers filed a petition for reconsideration which was denied November 22, 1950. It will be observed that the denial was two days after the time had passed within which appellant here might have filed application for renewal under the Patent Office Trade-Mark Rules. No reference was made to the expiration of appellant's registration 273,954 in the decision of the Examiner-in-Chief of October 31, 1950, nor in the decision of November 22 denying reconsideration.

Notice of appeal to this court by Malvina D. Myers was given the Commissioner of Patents with a statement of the reasons of appeal on December 16, 1950. As a result of such notice, the subject matter passed from the jurisdiction of the Patent Office to this court. See decision in In re Allen, Jr., 115 F.2d 936, 28 C.C.P.A., Patents, 792, and cases therein cited.

Notwithstanding jurisdiction had so passed from the Patent Office to the court, appellee, on February 27, 1951, filed a motion in the Patent Office to dismiss the appeal. It was asserted in substance in the motion that appellant's registration expired November 20, 1950 through appellant's failure to file an application to renew within the time required by Trade-Mark Rules 35.2 and 35.3, and that appellant's appeal, therefore, had become moot.

On March 9, 1951, an answer to the motion to dismiss was filed on behalf of appellant in which it was asserted that "the issues to be decided in said appeal are not moot even though said registration No. 273,954 has expired." The answer also stated:

"4. That Appellant has filed in the Patent Office an application for the mark shown in said registration and for the same goods, under Serial No. 608,844, on January 22, 1951; and that such application is being specially examined in order to merge the matters relating to said application with the record of said cancellation and to thereby provide subject matter having substantially the same issues as those relating to the cancellation of Registration No. 273,954."

It may be seen that the filing date (January 22, 1951) of the application referred to was subsequent to the expiration on November 20, 1950 of the period within which appellant might have filed renewal application, and subsequent to the Examiner-in-Chief's holding that the mark should be cancelled, but prior to the date (February 27, 1951) when appellee's motion to dismiss the appeal to this court was filed in the Patent Office.

(It may be said here that the application of Malvina D. Myers for the registration of the mark, the original registration of which had expired, was filed in the Patent Office on January 22, 1951, and duly prosecuted. The application was finally refused on July 9, 1951 by an Examiner-in-Chief acting for the Commissioner of Patents under Reorganization Plan No. 5 of 1950, 15 Fed.Reg. 3174. Appeal was taken to this court, and we are deciding that ex parte case concurrently herewith. As may be seen, we are reversing the decision of the Examiner-in-Chief and holding applicant Myers entitled to the regis-

tration. See In re Myers, 201 F.2d 379, 40 C.C.P.A., Patents, ——.

On April 5, 1951 appellee's motion to dismiss the appeal and appellant's answer thereto were transmitted by the Patent Office to this court and filed.

The petition for review with transcript of the record had not then been received at the office of the Clerk of the court, the time for its transmission having been extended to June 21st by the commissioner at the request of appellant. It was in fact filed in the court June 14, 1951.

As is our custom, the court considered the motion to dismiss at a conference-in-chambers and it was concluded that briefs and arguments upon the procedural questions involved should be heard. Hence, an order was entered "that said motion of appellee, Polk Miller Products Corporation, be, and same is, dismissed without prejudice."

█ The dismissal "without prejudice," of course, left the way open for a renewal of the motion to dismiss at the hearing before us if appellee should desire to make such motion.

While it is argued in the brief on behalf of appellee that the issues covered by the appeal were moot and that the appeal was moot at the time, December 16, 1951, appellant gave notice of it to the Commissioner of Patents, the motion to dismiss was not formally renewed at the oral hearing before us, November 3, 1952, and the oral argument, like the brief of counsel for appellee, was directed almost wholly to the merits.

The Examiner-in-Chief who rendered the decision in the case of In re Myers, supra, (not the same individual who rendered the decision in this case) recognized the pend-ency of appellant's appeal in this court, saying:

"Since the appeal to the Court of Customs and Patent Appeals in the cancellation proceeding is still pending, the question of res judicata cannot be considered at this time, In re Isler, 152 F.2d 1002, 33 C.C.P.A., Patents, 791. The court suggested, in the decision cited, that it would be better practice for the Patent Office to suspend action on the second case until after a final decision in the first case. However, in the present case, applicant petitioned the Commissioner that the appeal in the Patent Office be expedited in order that appeal to the Court in the present case could be considered by the Court together with the pending appeal in the cancellation proceeding, which petition was granted by the Assistant Commissioner."

█ We have given much thought to the course which this court should pursue with respect to the motion to dismiss under the peculiar and, so far as we can determine, unprecedented facts of this case. In the cases where issues have become moot as a result of judicial decisions, or otherwise, the courts unquestionably have the authority, and it often becomes their duty, to dismiss cases *sua sponte* and without any motion to dismiss being made. It is our conclusion, however, that the facts appearing in these inter-related cases [1] render such an action on our part improper here. Indeed, we think it would not be proper to dismiss even if the motion had been renewed.

We have referred to the factual situation being unprecedented so far as we can determine, and that is true. The situation in

---

[1]. In the brief of the Solicitor for the Patent Office in the case of In re Myers, decided concurrently herewith. See In re Myers, 201 F.2d 379, 40 C.C.P.A. Patents, ——, it was said:

The present appeal is closely related to cancellation proceeding No. 5316. The relationship is explained on pages 2 to 6 of appellant's brief. In view of that fact and since the decision of the Examiner-in-Chief in the present case is based on "the reasons expressed in the prior decision in the cancellation proceeding" the appellant seems to have assumed that the record in the cancellation proceeding will be considered in this case, although it has not been included in the record. No objection is here made to such consideration and, indeed, it would seem impossible to decide this case properly without it.

the cited case of Pabst-Ett Corp. v. Dr. W. J. Ross Co., 120 F.2d 390, 28 C.C.P.A., Patents, 1164, was different from the situation here in the following respect: that was an opposition proceeding in which the Primary Examiner sustained the opposition, but denied registration *ex parte*. The commissioner, holding the goods of the parties were not of the same descriptive properties, reversed the examiner in sustaining the opposition but affirmed the *ex parte* holding denying registration on the ground that the mark was either descriptive or misdescriptive of the goods. The applicant, Ross & Company, did not appeal from the adverse *ex parte* decision but the opposer, Pabst-Ett Corporation, appealed from the commissioner's holding to the effect that the goods were not of the same descriptive properties. By reason of the *ex parte* decision in that case, registration of the mark which the opposer was seeking to prevent was prevented and a decision that the goods were or were not of the same descriptive properties could have no effect whatever upon the matter of registration. Hence, the issue of "same descriptive properties" was moot so far as any question of registration was concerned. That which had been done could not be undone by action of the courts, no appeal of the decision denying registration having been taken.

The situation in that case was much the same as that in the there cited case of Frankfort Distilleries, Inc., v. Dextora Company, 103 F.2d 924, 26 C.C.P.A., Patents, 1244.

■ In the instant case the status of appellant's registration had not been finally determined judicially when the appeal to this court was taken. Appellant's notice of appeal was timely given to the Commissioner of Patents and the appeal itself was timely perfected. With that appeal to this court pending, it cannot be said that the decision of the Examiner-in-Chief was of such finality that it precluded appellant's right to have the expired mark re-registered, nor does the fact that it was permitted to expire, of itself, preclude such right and we feel that, since the application to register the expired mark was re-jected *ex parte*, substantially on the decision of the Examiner-in-Chief in this interference case, See our decision in In re Myers, supra, appellant is entitled to have a review and a decision of the interference by this court upon the merits.

■ We do not agree with the decision of the Examiner-in-Chief either that the marks are "substantially identical" or "that the goods of the respective parties do possess sufficiently close descriptive properties as to lead to likelihood of confusion as to origin."

To the contrary, we are of opinion that there is an obvious difference in the marks and certainly a pronounced difference in the goods.

■ We, of course, are considering the marks as shown in the respective registrations. In the brief for appellant there is some argument to the effect that appellee's mark is in fact "Sergeant's Sure Shot." That is an untenable position based upon some testimony and not upon the registration itself. Whatever may be appellee's method of using its mark, the registration consists of only the two words, and that is all that we are concerned with in this proceeding.

On the other hand, appellant's mark is more than just the two words. The silhouette of the female figure holding bow and arrow may not be disregarded. It is not a picture which merely expresses the meaning of the words, nor do the words merely define the picture.

As for the characteristics of the goods, we find it difficult to conceive two articles more remote from each other in characteristics and nature than one for the treatment of dandruff which forms on the scalps of humans, and one for the eradication of worms in the intestines and stomachs of dogs. The material for treating dandruff is applied externally and, in that use which according to the testimony is its principle use, it is, we think, universally looked upon as a toilet article. The President of appellee testified that his company's here-involved mark was "applied to a soft gelatin capsule containing an anthelmintic drug." An anthelmintic drug is one used

for the eradication of worms. (See Webster's New International Dictionary). So far as the record shows, appellee, Polk Miller Products Corporation, manufactures only remedies for animals. Its president testified that the company had a number of trade-marks. The one here involved is specific to a particular remedy for dogs.

■ In the brief of appellee much emphasis is placed upon the fact that the labels on at least some of the bottles containing the liquid manufactured by appellant recommend it for "irritated skin, pimples, and burns and athletes foot," and upon the further fact that Mrs. Myers herself testified that the liquid contained medicinal ingredients and that it was a remedy for "irritated skin, pimples, etc." The argument seems to be that appellant's dandruff lotion is a medicine and appellee's dog worm remedy is a medicine and, therefore, they are possessed of the same descriptive properties or at least are so similar in nature that confusion would be likely to result from the concurrent use of the trade-mark containing the words "Sure Shot." That view does not appeal to us as being a sound one. There are many types of medicines in this world and to hold that all of them possess the same descriptive properties or that they are similar in the sense of the trade-mark law would be to go further than any court has ever gone, so far as we are informed.

In his decision, the Examiner-in-Chief cited the decision of this court in the three consolidated cases of G. H. Packwood Manufacturing Company v. Cofax Corporation, 183 F.2d 196, 37 C.C.P.A., Patents, 1195, and quoted therefrom the following general observation:

"Goods of the same descriptive properties, in the ordinary sense, are goods or products each of which is like the other; they are all things of the same kind. Goods of the same descriptive properties, in the statutory sense, include however not only the same kind of things but also things entirely different from one another. The distinction is not wholly logical, but purely legal, and the test to be applied, as a matter of law, when the question arises is not the likelihood of confusion as to the difference in the goods but the likelihood of confusion as to the difference in the ownership of two identical marks attached to the goods."

So far as the instant case is concerned, the marks, as has been stated, are not identical, and we have no occasion to speculate about "likelihood of confusion." The two marks were used concurrently on the respectively described goods during a period of at least twenty years. The goods of both parties were sold in the same territory, and in a few instances, seem to have been handled in the same drug stores (although appellant's product ordinarily was not sold in drug stores). Appellee's product, seemingly, was sold principally in drug stores and it was evidently much more widely distributed than the product of appellant. The president of appellee testified:

"* * * it is widely and generally distributed throughout the drug trade and other retail outlets which I previously mentioned in the entire United States, Canada, and a number of foreign countries."

■ The full extent of the territory in which appellant's product was sold is not definitely defined in the testimony, but several states are named in which it was sold, and it is noted that counsel for appellee seem to have taken particular pains to prove sales of appellee's product in appellant's home state of Alabama. Since appellant's case depended upon the matter of confusion, it is reasonable to suppose that efforts were made to find where there had been actual confusion. However that may have been, in all the testimony taken there is no showing of one single incident of confusion as to either the properties or the origin of the respective goods.

In our opinion, such long continued concurrent use of the marks without any actual confusion being found, negates likelihood of confusion. The oft-quoted aphorism of Cervantes, "The proof of the pudding is in the eating" seems apposite here.

The several judicial decisions cited in the brief for appellee relating to the similarity

of goods have been carefully studied. In no one of them do we find a case where an article for internal use in the specific treatment of animals has been held to have the same descriptive properties or to be confusingly similar to an article specifically made for external use on human beings. If there be such a decision by the Supreme Court of the United States, we would be bound by it, but we would hesitate, to say the least, to follow such a decision by any other judicial or semi-judicial tribunal.

In our opinion, the decision of the Examiner-in-Chief was erroneous and it is reversed.

Reversed.

O'CONNELL, J., dissents.