40 C.C.P.A.(Patents)

### Application of MYERS et al.
### Patent Appeals No. 5904.

United States Court of Customs and Patent Appeals.

Jan. 14, 1953.

John F. Brezina, Chicago, Ill. (Robert I. Dennison, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of an Examiner-in-Chief,[1] acting for the Commissioner of Patents by delegation under Reorganization Plan No. 5 of 1950, 5 U.S. C.A. § 133Z–15 note, 15 Fed.Reg. 3174, affirming the refusal by the Primary Examiner to register a composite mark consisting of a silhouette of a human female figure holding a drawn bow and arrow and having above the figure the words "Sure Shot" in curved arrangement, the words being printed with somewhat fanciful black-faced type, as a trade-mark for a "Topical Liquid Preparation For Treatment of Dandruff." A topical liquid is one for local application, according to Webster's New International Dictionary.

The mark is one which was in use by applicant's predecessor in business (her husband, Harry H. Myers) and by herself as his successor, on merchandise of the identical kind described, over a long period of years. Its use is alleged in the application to have begun November 15, 1929 and it was registered (Registration 273,954) on August 19, 1930, to Harry H. Myers, doing business as Mobile Barber and Beauty Supply House of Mobile, Alabama, as a trade-mark for identical goods. It was republished July 13, 1948 under the Act of 1946, 15 U.S.C.A. § 1051 et seq., but application was not made for its renewal on the date it was due to expire (August 19, 1950), as normally might have been done before, or within three months after, that date by complying with Patent Office Trade-Mark Rules 35.2 and 35.3.

The failure to make such application has been explained in the briefs of appellant in this case and in another proceeding before the court, to which latter proceeding it is necessary to refer in order properly to decide this case.[2] The proceeding alluded to is one for cancellation of appellant's registration 273,954, instituted in the Patent Office by Polk Miller Products Corporation on December 20, 1948—cancellation No. 5316—which this court decided concurrently herewith. See Myers v. Polk Miller Products Corporation, 201 F.2d 373, 40 C.C.P.A., Patents, ——.

In that case the Polk Miller Products Corporation pleaded ownership of a mark (Registration No. 226,819) consisting of the words "Sure Shot" printed in black-faced capital letters, used as a trade-mark for "Capsules and a liquid preparation for dogs." The president of the corporation testified that the trade-mark "is applied to a soft gelatin capsule containing an anthelmintic drug;" that is, a drug used for the destruction of worms in animals. The petition for cancellation made the customary allegations as to similarity of the respective marks; similarity of the properties of the respective goods; likelihood of confusion as to origin with resultant injury to petitioner, etc. (matters more fully discussed in our decision in the cancellation proceeding, supra), and prayed for cancellation of Myers' registration.

As may be seen from our decision in that case, the Examiner-in-Chief reversed

---

1. In re Myers, 90 USPQ 118.

2. In the brief of the Solicitor for the Patent Office before us it is said:

"The present appeal is closely related to cancellation proceeding, No. 5316. The relationship is explained on pages 2 to 6 of appellant's brief. In view of that fact and since the decision of the Examiner-in-Chief in the present case is based on "the reasons expressed in the prior decision in the cancellation proceeding" the appellant seems to have assumed that the record in the cancellation proceeding will be considered in this case, although it has not been included in the record. No objection is here made to such consideration and, indeed, it would seem impossible to decide this case properly without it."

the decision of the Examiner of [Trade-Mark] Interferences and held in the decision, 87 USPQ 224, that the registration 273,954 to Harry H. Myers "should be cancelled." This, it will be observed, was subsequent to the expiration date of the registration of August 19, 1950, but was within the time in which renewal normally might have been obtained by compliance with the Trade-Mark Rules, above-named. No reference to the expiration was made in the decision of the Examiner-in-Chief, and a petition for reconsideration was denied by him on November 22, 1950, which was two days after the date (November 20th) on which application for renewal might have been made under the Patent Office Trade-Mark Rules.

Notice of appeal to this court from the decision of the Examiner-in-Chief was filed in the Patent Office December 16, 1950, as a result of which notice jurisdiction of the interference proceeding passed from the Commissioner of Patents to this court. In re Allen, Jr., 115 F.2d 936, 28 C.C.P.A., Patents, 792, and cases therein cited.

However, on February 27, 1951, appellee Polk Miller Products Corporation filed in the Patent Office a motion to dismiss the appeal alleging that "Said appeal is now moot in view of the expiration of said Registration 273,954," and on March 12, 1951, appellant Myers filed a "Memorandum opposing motion to dismiss," in which it was asserted that "the issues to be decided in said appeal are not moot, even though said registration, No. 273,954 has expired."

In the memorandum it was also stated:

"4. That Appellant has filed in the Patent Office an application for the mark shown in said registration and for the same goods, under Serial No. 608,-844, on January 22, 1951; and that such application is being specially examined in order to merge the matters relating to said application with the record of said cancellation and to thereby provide subject matter having substantially the same issues as those relating to the cancellation of Registration No. 273,954."

The application so alluded to is the one here before us on appeal. It is, of course, made under the Trade-Mark Registration Act of 1946.

The subsequent actions in the cancellation proceedings are related in our decision in that case, and need not be repeated here in detail.

For the reasons stated in our decision in the cancellation proceeding, we were of opinion and held that the Examiner-in-Chief, who acted for the Commissioner in that case, erred in reversing the decision of the Examiner of [Trade-Mark] Interferences.

For substantially the same reasons given for the reversal of the decision of the Examiner-in-Chief there, we feel constrained to reverse the decision of the Examiner-in-Chief [3] who acted in this *ex parte* case and affirmed the decision of the Primary Examiner.[4]

As a matter of fact, the decision of the Examiner-in-Chief in the cancellation proceeding was the basis of the rejection of appellant's application by the respective tribunals of the Patent Office in the instant *ex parte* proceeding.

In his first office action on the application on February 9, 1951, the Primary Examiner said only:

In view of the decision in cancellation No. 5316 Registration is refused on:

"226,819—Polk Miller Products Corporation Registered April 19, 1927 (Renewed Polk Miller Products Corp.)"
and in his statement following the appeal to the Commissioner he said:

"The word feature of both marks is identical and it is the opinion of the Examiner that concurrent use of the marks on the goods of record would be likely to result in confusion, mistake or the deception of purchasers.

3. The Examiner-in-Chief in this *ex parte* case was not the same individual who acted in that capacity in the cancellation proceeding.

4. The individual acting as Primary Examiner in this *ex parte* case had no official connection with the cancellation proceeding.

"It is believed that dandruff preparations and preparations for use in the treatment of drugs would be sold through the same channels of trade—namely, drug stores, and it would not be unlikely that a maker of a preparation for treating the hair and skin of a dog would make a preparation for treating the hair and skin of a person.

"The decision: Polk Miller Products **v.** Myers 87 U.S.P.Q. 224, 640 O.G. 1072 is believed to be controlling."

The Primary Examiner seems to have mistakenly thought that the Polk Miller Products Corporation's gelatin capsule and liquid was for treating the hair and skin of dogs. The testimony makes it quite clear that it was for an internal remedy for eradication of worms.

The only reason given by the Examiner-in-Chief, who acted for the Commissioner in this case, was stated as follows:

"The decision of the Examiner refusing the instant registration is affirmed for the reasons expressed in the prior decision in the cancellation proceeding. Applicant's argument on this appeal is merely a reargument of the issue argued and decided in the cancellation proceeding."

"Since the appeal to the Court of Customs and Patent Appeals in the cancellation proceeding is still pending, the question of res judicata cannot be considered at this time, In re Isler, 152 F.2d 1002, 33 C.C.P.A., Patents, 791. The court suggested, in the decision cited, that it would be better practice for the Patent Office to suspend action on the second case until after a final decision in the first case. However, in the present case, applicant petitioned the Commissioner that the appeal in the Patent Office be expedited in order that appeal to the Court in the present case could be considered by the Court together with the pending appeal in the cancellation proceeding, which petition was granted by the Assistant Commissioner."

While, as stated by the Primary Examiner, the *word feature* of both marks is identical except as to the arrangement of the words which is not material, we do not think the design feature of appellant's mark consisting of the silhouette described, may be disregarded. It is a distinctive feature which, while not necessarily controlling, clearly displays a difference in the marks, and it does not seems to us to be a mere illustration of the words, as was the case with the design features of the marks involved in the case of Dwinell-Wright Co. v. Gundlach, 121 F.2d 639, 28 C.C.P.A., Patents, 1348, and In re Sears, Roebuck & Co., 132 F.2d 341, 30 C.C.P.A., Patents, 710, to which our attention is directed in the brief of the Solicitor of the Patent Office.

Of greater importance, as we view it, is the unquestioned *per se* difference in the characteristics and properties of the goods of the respective parties. As said, in substance, in our decision in the cancellation proceeding, we find it difficult to conceive of goods having a more pronounced difference in characteristics and properties than concoctions for local application to the scalps of human beings and those to be administered internally for the destruction of worms in the intestines and stomachs of dogs. This is true even if the liquid for scalp treatment has medicinal ingredients and be regarded as a medicine instead of a toilet article, which latter, we think, is not the case in common popular understanding. In the cancellation case, Mrs. Myers testified that it had never been handled by them as a medicinal product, but added that it was such due to the fact that it had certain named ingredients in it. "It is not," she said, "just water and perfume." We feel assured that in common usage it most often is thought of and spoken of as a toilet article, but, as already stated, the distinctive differences exist no matter what appellant's product may be called.

It should be remembered that the Trade-Mark Registration Act of 1946 (commonly called the Lanham Act) under which the application here involved was filed, differs in various particulars from the Act of February 20, 1905, under which the trade-mark of appellant was registered in 1930. Some of the changes were pointed out in our decision in the case of Alligator

Company v. Larus & Brothers Company, Inc., 196 F.2d 532, 535, 39 C.C.P.A., Patents, 939, and, after reciting them, we quoted with approval the statement of Assistant Commissioner Daniel, who, in that case, was acting for the Commissioner, as follows:

"* * * It is no longer necessary to establish that the goods of the parties possess the same descriptive properties, as was previously required under Section 5 of the Trade-Mark Act of 1905, and it has been held by the Patent Office in ex parte matters that the new section provides a more flexible test which will require refusal of registrations in cases where there is likelihood of confusion, mistake or deception, even though the goods fall into different categories, *while presumably permitting registration in the case of goods which fall within the same general class, but where it is apparent that confusion is unlikely.*" [Italics ours].

So far, we have referred herein to confusion relating to the goods *per se*. That is an element which necessarily is of great moment in passing upon the ultimate question as to confusion respecting the origin of the goods.

It is interesting to compare the following provisions of the Trade-Mark Registration Act of February 20, 1905, under which appellant's mark originally was registered, and that of the 1946 Act under which the application here involved was made. For convenience of comparison, we place the provisions in parallel columns:

| Sec. 5(b), Act of 1905, 15 U.S.C.A. § 85. | Sec. 2, Act of 1946, 15 U.S.C.A. § 1052. |
|---|---|
| "That no mark by which the goods *of the owner of the mark* may be distinguished *from other goods of the same class* shall be refused registration as a trade-mark on account of the nature of such mark— * * * Provided, That trade-marks which * * * *so nearly resemble a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties* as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers shall not be registered." [Italics ours.] | "No trade-mark by which the goods *of the applicant* may be distinguished from the *goods of others* shall be refused registration on the principal register on account of its nature *unless* it— * * * Consists of or comprises *a mark which so resembles a mark registered in the Patent Office* * * *, as to be likely, *when applied to the goods of the applicant,* to cause confusion or mistake or to deceive purchasers." [Italics ours.] |

The changes in language, in our opinion, are not without significance, and the facts of each particular case must be taken into consideration. We think it is obvious that, in determining the question of "likelihood" of confusion, there often is a distinction between *ex parte* and opposition proceedings on the one hand, and cancellation proceedings on the other.

In an *ex parte* proceeding, likelihood of confusion almost always is determined upon the basis of individual opinion—that is, the personal opinion of the officials who pass upon the application. The same is often true of opposition proceedings, but, as to the latter, it also is the case that testimony is frequently taken which is of aid to the tribunals of the Patent Office and the courts in determining the likelihood or probability of confusion.

In *ex parte* cases, the applicant usually is proceeding to initiate something. No rights have become fixed. This, too, is generally true as to the applicant where opposition to the grant of a registration is presented. In neither instance is there involved an established business which is largely dependent upon a trade-mark for success.

In a cancellation proceeding, the situation is quite different. The defendant in such proceeding is one who has obtained substantial rights from the Government

upon or about which he may have built a large and, of course, legitimate business. The cancellation of one's trade-mark may prove destructive to the business built about it. Surely, no registration should be cancelled hastily and without a most careful study of all the facts.

Confusion as to origin ordinarily constitutes the fundamental question in a cancellation proceeding. That, we think, is the situation in the instant case.

A legitimate business was established by appellant's predecessor and in the infancy of that business the trade-mark at issue was adopted and registered. Its use continued without interruption or interference as the business grew in volume and expanded territorially.

It is a fair assumption from the record that the business of appellee was larger in volume and more widespread territorially than that of appellant, but it is clear that appellant's product was distributed in many states in which sales were being concurrently made by appellee.

The facts appearing respecting this controversy, as developed in the cancellation case, are that the goods of Polk Miller Products Corporation and the goods of Myers were sold in the same territory with the respectively described marks applied thereto during a period of at least twenty years, and that not one single incident of confusion as to the goods *per se* or as to their origins was shown.

We think the failure or inability to show even one instance of the kind in the past creates a strong presumption against likelihood of confusion in the future.

It is not meant to hold that in cancellation cases, positive proof of actual confusion must be produced. Of course, in each instance, the facts as to length of time of use, the territory in which used, and other pertinent features must be carefully scrutinized and properly weighed.

With respect to the instant case, in view of the differences in the marks, the differences in the goods, and the record in the cancellation proceedings, we are not impressed by the contention that there is any reason upon which to base a surmise that the application of the mark which appellant seeks to register is, to quote the language of the statute, "likely * * * to cause confusion or mistake or to deceive purchasers * * *."

The decision of the Examiner-in-Chief, acting for the Commissioner of Patents, is reversed.

Reversed.

O'CONNELL, J., dissents.