58 CCPA

**FOOD SPECIALTY CO., Inc., Appellant,**

v.

**CATZ AMERICAN CO., Inc., Appellee.**

**Patent Appeal No. 8352.**

United States Court of Customs and Patent Appeals.

Nov. 25, 1970.

Robert W. Beach, Seattle, Wash., attorney of record, for appellant. George R. Jones, Beale & Jones, Arlington, Va., of counsel.

S. Stephen Baker, New York City, for appellee.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and McMANUS, Judge, Northern District of Iowa, sitting by designation.

RICH, Judge.

This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board (abstract 156 USPQ 715) denying appellant's petition to cancel appellee's Principal Register registration No. 720,077, of Aug. 15, 1961, of the trademark "HERE, KITTY!" for canned cat food. We reverse.

Appellant's petition is predicated on its ownership of the trademark "Kitty" for cat food, registered on the Principal Register Aug. 9, 1960, Reg. No. 702,658. Appellant's filing date, Jan. 30, 1956, antedates appellee's date of first use, Aug. 19, 1959. Priority is therefore not an issue. The goods must legally be regarded as identical and the sole question for decision is likelihood of confusion, mistake, or deception. 15 U. S.C. § 1052(d).

The decision of the board herein was rendered Jan. 12, 1968, prior to our decision in Food Specialty Co. v. Standard Products Co., 406 F.2d 1397, 56 CCPA 1005 (Mar. 13, 1969). In that case we reversed the board and sustained an opposition by appellant here, based on the same registration relied on here, to registration of the trademark "Pretty Kitty" for cat food. Appellant deems that precedent controlling here. So do we.

In the "Pretty Kitty" case we rejected the argument that "Kitty" is merely descriptive and generic as applied to cat food while recognizing the obvious fact that it is "not entirely arbitrary," as appellee contends. We held that confusion would nevertheless be likely to result from the concurrent use of "Kitty" and "Pretty Kitty" on cat food. We have nearly the same issue here regarding the likelihood of confusion between "Kitty" and "HERE, KITTY!" and we are of the same opinion: confusion or mistake would be likely.

The only new argument here, as compared with the prior case, is that this is a cancellation whereas the prior case was an opposition. We are unable to see that that difference is significant. Appellee cites certain dictum from the opinion in In re Myers, 201 F.2d 379, 40 CCPA 747 (1953), in support of its thesis that the situation in a cancellation is quite different from that in an opposi-

tion because, quoting from *Myers*, "The cancellation of one's trade-mark may prove destructive to the business built about it." *Myers* quoted no authority for that statement, which is not accurate. It is a *registration* which is cancelled, not a trademark. There is no way to cancel a trademark. *Myers* was otherwise in error, and we cannot accept its dictum. Furthermore, *Myers* was an ex parte appeal. Appellee took no testimony in this case and there is no evidence that it presently has *any* business under its registered mark.

It is interesting to note that the board cited its own prior decision in the "Pretty Kitty" case as a precedent for its decision herein. We reversed that precedent. In considering our prior "Pretty Kitty" decision to be "controlling" herein, we do so in the sense that the *logic* underlying the prior decision compels the decision here, not that the *decision* as to another mark is binding.

The decision of the board is reversed.

Reversed.

BALDWIN, Judge (dissenting).

I agree that the sole issue here is the question of likelihood of confusion under § 2(d) of the Lanham Act. I agree also that the legal tests and the logical inquiries to be used in resolving such a question cannot change depending on the type of proceeding in which the question arises. However, I think the majority opinion is clearly in error in holding that there is *no* significance in the fact that the proceeding before us is a cancellation proceeding.

The language used in the *Myers* opinion relied on by appellant is properly criticized by the majority. Nevertheless, I find the rationale behind that language to be correct. The difference between a cancellation proceeding and an opposition proceeding *is* significant. I feel that some consideration should be accorded this distinction, not in the legal standards to be applied—they are immutable—but in *considering the evidence* by which those standards are to be applied. In a cancellation proceeding we are dealing with the question of whether presently existing rights (those accruing from a federal registration) should be taken away. Appellee here stands to lose federal rights, significant rights, which loss may very well "prove destructive to the business" he has built around his trademark.[1] Whereas, in an opposition proceeding, the question involves a party's *right to a registration*. At the very least, the burden of proof carried by one who would have rights cancelled should be greater than the burden of one who's only purpose is to prevent a registration from issuing.

Assuming the existence of a greater burden of persuasion, I find that appellant did not satisfy that burden. Yet even aside from any additional burden arising from the fact that this is a cancellation proceeding, I think the board's decision here was correct and should be affirmed. The word "Kitty" is not a strong trademark, evincive of a single definite source of goods. Conceding that it is no more than suggestive (in deference to the holding in the "Pretty Kitty" case), I still find that it is only suggestive of kittens or cats and not of any quality or action connected with such animals. Adding to the dominant term the connotation of a quality (e. g., "Pretty Kitty") may not be sufficient to remove any likelihood of confusion. However, I submit that when appellee's mark (Here, Kitty!), connoting a call to

---

1. The majority opinion notes that no evidence is before us that appellee presently has any business under its mark. Such remark is meaningless. Federal trademark rights, as well as common law rights, are based on actual trademark usage, and trademark use by its very nature connotes business usage. In an inter partes proceeding it has long been settled that the registration itself constitutes prima facie evidence of continuing trademark use. See Gillette Co. v. Kempel, 254 F.2d 402, 45 CCPA 920 (1958). Appellee here was under no obligation to prove trademark use and its use of that trademark in an established business should not be questioned.

the animal, is viewed with the inherent weakness of the dominant portion taken into consideration, the two marks are sufficiently different so as to preclude any likelihood that consumers would be led to believe that appellee's cat food and appellant's cat food came from the same source.